Cheryl L. O'Connor (SBN. 173897)
coconnor@jonesday.com
Ann T. Rossum (SBN. 281236)
atrossum@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Telephone:  (949) 851-3939
Facsimile:   (949) 553-7539

Michael B. Hazzard (*pro hac vice*)
mhazzard@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone: (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant CALLFIRE, INC.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| LEE WIGOD, *individually and on be-half of all others similarly situated*,<br><br>                    Plaintiff,<br><br>          v.<br><br>CALLFIRE, INC.,<br><br>                    Defendant. | Case No. 2:19-cv-02874-SVW-MAA<br><br>Assigned to Hon. Stephen V. Wilson<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COM-PLAINT**<br><br>Hearing Date:   June 24, 2019<br>Time:          1:30 P.M.<br>Place:         10A<br><br>Complaint filed: April 15, 2019 |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..........................................................................ii

INTRODUCTION .......................................................................................... 1

CALLFIRE'S OFFERING ............................................................................. 3

SUMMARY OF PLAINTIFF'S ALLEGATIONS ...................................... 5

ARGUMENT................................................................................................... 7

I.   PLAINTIFF'S CONCLUSORY ALLEGATIONS ARE INSUFFICIENT  TO STATE A CLAIM AGAINST CALLFIRE ................ 7

    A.   Legal Standard for Dismissal Under Rule 12(b)(6)............................. 7

    B.   CallFire Has No TCPA Liability As A Matter of Law ...................... 7

II.   PLAINTIFF HAS NOT AND CANNOT ALLEGE THAT CALLFIRE INITIATED THE TEXT MESSAGES AT ISSUE IN THIS CASE ............. 8

    A.   The FCC Has Defined What It Means To Be An "Initiator," And CallFire Does Not Meet That Definition ............................................. 10

    B.   Federal Courts Have Upheld The FCC's View That Cloud-Based Platform Providers Are Not "Initiators" Under The TCPA ..... 12

    C.   Plaintiff Does Not—And Cannot—Plead That CallFire Is An "Initiator" .......................................................................................... 13

III.   BECAUSE CALLFIRE DID NOT INITIATE ANY TEXT MESSAGES AS A MATTER OF LAW, PLAINTIFF'S DO-NOT-CALL REGISTRY CLAIM MUST FAIL ........................................... 14

IV.   PLAINTIFF'S CLAIMS THAT HE OPTED OUT OF FURTHER MESSAGES BY RESPONDING "STOP," AND THAT HE NEVER CONSENTED TO RECEIVING TEXT MESSAGES, ARE IRRELEVANT BECAUSE CALLFIRE DID NOT INITIATE ANY MESSAGES ........................................................................................... 15

V.   CALLFIRE IS NOT AN ATDS AS A MATTER OF LAW ...................... 17

VI.   AS A COMMON CARRIER, CALLFIRE MERELY TRANSMITS ITS CUSTOMERS' MESSAGES AND THUS IS NOT SUBJECT TO TCPA INITIATOR LIABILITY .......................................................... 19

    A.   CallFire Is A "Common Carrier" ...................................................... 19

    B.   CallFire Is Not Subject To Any Exceptions To The Rule Against Common Carrier Liability.................................................... 21

CONCLUSION.............................................................................................. 22

# TABLE OF AUTHORITIES

**C**ASES                                                                                        **Page**

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004) ..................................................................... 7

*Armstrong v. Investor's Business Daily, Inc.*,
   No. CV 18-2134, 2018 WL 6787049 (C.D. Cal. Dec. 21, 2018)..................... 19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................... 7

*Canary v. Youngevity International, Inc.*,
   5:18-cv-03261, 2019 WL 1275343 (N.D. Cal. Mar. 20, 2019) ........................ 9

*Clark v. Avatar Technologies PHL, Inc.*,
   No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014)............................ 10

*Couser v. Pre-paid Legal Services, Inc.*,
   994 F. Supp. 2d 1100 (S.D. Cal. 2014) ........................................................... 9

*Derby v. AOL, Inc.*,
   15–cv–00452, 2015 WL 3477658 (N.D. Cal. June 1, 2015) ............................ 17

*Duguid v. Facebook, Inc.*,
   No. 15-cv-00985, 2016 WL 1169365 (N.D. Cal. Mar. 24, 2016)...................... 17

*Duran v. La Boom Disco, Inc.*,
   No. 17-cv-6331, 2019 WL 959664 (E.D.N.Y. Feb. 25, 2019) .......................... 18

*Freidman v. Massage Envy Franchising*,
   Civ. No. 3:12-cv-02962-L-RBB, 2013 WL 3026641 (S.D. Cal. Jun.
   13, 2013)....................................................................................................... 18, 19

*Hulsey v. Peddle, LLC*,
   CV 17-3843, 2017 WL 8180583 (C.D. Cal. Oct. 23, 2017) ................... 2, 17, 18

# TABLE OF AUTHORITIES

**Page**

*Kauffman v. CallFire, Inc.*,
    141 F. Supp. 3d 1044 (S.D. Cal. 2015) .......................................................passim

*Kauffman v. CallFire, Inc.*,
    No. 3:14-cv-1333, 2014 WL 12778843 (S.D. Cal. Sept. 9, 2014)..........10, 18, 20

*Linlor v. Five9, Inc.*,
    No. 17-CV-00218, 2017 WL 2972447 (S.D. Cal. July 12, 2017) ......................19

*Luna v. Shac, LLC*,
    122 F. Supp. 3d 936 (N.D. Cal. 2015).................................................................18

*Marks v. Crunch San Diego, LLC*,
    904 F.3d 1041 (9th Cir. 2018)............................................................................19

*McKenna v. WhisperText*,
    No. 5:14-cv-00424, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015)................9, 13

*Meeks v. Buffalo Wild Wings, Inc.*,
    No. 17-cv-07129, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018),
    *appeal pending* ...............................................................................................9, 13

*Mendez v. C-Two Group, Inc.*,
    No. 3:13-cv-05914, Order Granting Defendant mobileStorm, Inc.'s
    Motion to Dismiss (N.D. Cal. Apr. 21, 2014)......................................................9

*Naiman v. Freedom Forever, LLC*,
    No. 19-cv-00256, 2019 WL 1790471 (N.D. Cal. Apr. 24, 2019).............9, 15, 19

*Pacific Bell v. Pac West Telecomm, Inc.*,
    325 F.3d 1114 (9th Cir. 2003)......................................................................13, 22

*Qwest Communications Corp. v. City of Berkley*,
    146 F. Supp. 2d 1081 (N.D. Cal. 2001)..............................................................20

*Ramos v. Hopele of Fort Lauderdale, LLC*,
    334 F. Supp. 3d 1262 (S.D. Fla. 2018)...............................................................18

# TABLE OF AUTHORITIES

**Page**

*Reardon v. Uber Technologies, Inc.*,
   115 F. Supp. 3d 1090 (N.D. Cal. 2015).................................................. 13

*Rinky Dink, Inc. v. Electronic Merchant Systems*,
   No. C13-1347-JCC, 2015 WL 778065 (W.D. Wash. Feb. 24, 2015).......9, 14, 21

*Simmons v. Charter Communications, Inc.*,
   222 F. Supp. 3d 121 (D. Conn. 2016) *aff'd* 686 F. App'x 48 (2d
   Cir. 2017)................................................................................................ 15

*Starr v. Baca*,
   652 F.3d 1202 (9th Cir. 2011) ................................................................ 7

*U.S. Telecom Ass'n v. FCC*,
   295 F.3d 1326 (D.C. Cir. 2002) ........................................................... 20

*Van Patten v. Vertical Fitness Group, LLC*,
   847 F.3d 1037 (9th Cir. 2017) ............................................................... 16

*Warciak v. Nikil, Inc.*,
   No. 16-c-05731, 2017 WL 1093162 (N.D. Ill. Mar. 23, 2017)............................. 9

*Warciak v. Subway Restaurants, Inc.*,
   No. 1:16-cv-08694, 2019 WL 978666 (N.D. Ill. Feb. 28, 2019),
   *appeal filed* ........................................................................................... 10

**STATUTES**

28 U.S.C. § 2342................................................................................... 13

47 U.S.C. § 227(b)(1) ............................................................................ 6

47 U.S.C. § 227(b)(1)(A)................................................................... 9, 16

47 U.S.C. § 227(c) ................................................................................ 15

47 U.S.C. § 402(a) ................................................................................ 13

Telephone Consumer Protection Act, 47 U.S.C. § 227...................................passim

# TABLE OF AUTHORITIES

**OTHER AUTHORITIES**                                                      **Page**

47 C.F.R. § 64.1200(a)(1)................................................................ 16

47 C.F.R. § 64.1200(c) ............................................................... 6, 15

47 C.F.R. § 64.1200(d) .................................................................. 15

*In the Matter of Enforcement of Prohibitions Against the Use of*
   *Common Carriers for the Transmission of Obscene Materials*,
   Memorandum Opinion, Declaratory Ruling and Order, 2 FCC Rcd.
   2819 (1987).......................................................................... 21

*In the Matter of Rules and Regulations Implementing the TCPA of*
   *1991*, 7 FCC Rcd. 8752 (1992) ................................... 19, 21

*Rules and Regulations Implementing the Telephone Consumer Protec-*
   *tion Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961
   (2015)............................................................................ 11, 12

Federal Rule of Civil Procedure Rule 12(b)(6) ............................... 7

# **INTRODUCTION**

Plaintiff, Lee Wigod ("Plaintiff"), alleges that he suffered injury as a result of unsolicited text messages he received regarding health insurance and home warranty plans, and yet he brings this complaint against CallFire, Inc. ("CallFire"), who is neither a health insurer nor a home warranty provider.  In fact, CallFire is a cloud services telephony provider, and it does not—and indeed, cannot—send texts.  The *only* allegations Plaintiff proffers to support his claim against CallFire are:  (1) an unsubstantiated claim that the messages he received came from a CallFire number, and (2) the fact that he received two texts confirming his opt-out that contained the phrase, "CallFire Alerts."  These tenuous allegations are insufficient to establish liability under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

The TCPA, in relevant part, restricts persons and entities from making telephone solicitations—including text messages—using certain automated telephone equipment.  To establish a violation of the TCPA, a plaintiff must show:  (1) the defendant *made* or *initiated* the communications at issue—mere *transmission* of the communications is not actionable under the TCPA; (2) the defendant used an automatic telephone dialing system ("ATDS" or "auto-dialer") to make or initiate the communications; and (3) the plaintiff did not solicit or consent to the received communications.  Plaintiff has failed adequately to plead two of these three requirements, and no amendment to his pleadings could remedy these deficiencies.

*First*, Plaintiff cannot show that CallFire *made* or *initiated* the text messages of which he complains.  Even assuming the veracity of Plaintiff's allegation that the messages he received came from a number associated with CallFire—and were thus transmitted using CallFire's software platform—Plaintiff *still* cannot establish that CallFire "made" or "initiated" these communications.  As part of its suite of product offerings, CallFire provides a software platform that offers its *customers* the ability to initiate text messages.  CallFire itself does not initiate any messages; it merely

1  serves as a common carrier in transmitting its customers' messages.  Indeed, numer-

2  ous courts have uniformly held, as a matter of law, that CallFire does not "make" or

3  "initiate" calls, texts, or other electronic communications; its customers do.

4       The fact that two of the messages Plaintiff received contained the phrase,

5  "CallFire Alerts," cannot salvage Plaintiff's failure to plead initiation.  The mere

6  mention of CallFire's name in a text message does not plausibly establish that Call-

7  Fire initiated that message.  And even if CallFire *had* initiated the two texts confirm-

8  ing Plaintiff's request to opt-out of further messages, the Federal Communications

9  Commission ("FCC") has unequivocally stated that a text confirming a consumer's

10  request to opt out of future communications does not violate the TCPA.  Thus, no

11  further factual development could possibly salvage Plaintiff's failure to plead initia-

12  tion, and his complaint should be dismissed on that basis alone.

13       *Second*, Plaintiff cannot establish that the messages he received were sent us-

14  ing an ATDS.  CallFire does not have, nor does it offer, an ATDS.  And courts across

15  the country have uniformly held, as a matter of law, that CallFire's platform is not an

16  ATDS.  Indeed, Plaintiff's counsel is well aware that his ATDS allegations do not

17  pass muster because a court in this district—and this very division—previously dis-

18  missed as insufficient almost identical ATDS allegations by Plaintiff's counsel in

19  another TCPA case.  *See Hulsey v. Peddle, LLC*, CV 17-3843, 2017 WL 8180583

20  (C.D. Cal. Oct. 23, 2017).  Despite the *Hulsey* court's rebuke, Plaintiff's counsel

21  copied and pasted the same failed allegations from that complaint into this one.  But

22  the second time cannot be the charm for these recycled claims.  They were insuffi-

23  cient then, and they remain insufficient now.

24       Furthermore, because Plaintiff cannot show that CallFire initiated the text

25  messages he received, his claim based on the national do-not-call registry necessarily

26  must fail.  To prove a do-not-call registry violation of the TCPA, Plaintiff must show:

27  (1) he is a residential telephone subscriber; (2) who registered his phone number on

28

1   the national do not call registry; and (3) he received two or more calls or text mes-

2   sages in any twelve month period initiated by or on behalf of CallFire.  Plaintiff's

3   failure to establish that CallFire initiated the text messages at issue in this case fore-

4   closes his claims based on a violation of the do-not-call registry.

5       Plaintiff might have suffered harm from the messages he received, and that

6   harm might be actionable under the TCPA.  Plaintiff has failed, however, to name as

7   defendants the parties who may have actually wronged him.  To succeed on his

8   claims, Plaintiff must seek redress from the party responsible for violating the TCPA;

9   that is, he must sue the party who "made" or "initiated" the messages he received.

10   Unfortunately for Plaintiff, CallFire is not that party.  Plaintiff has therefore failed to

11   state a claim, and this Court should dismiss his Complaint with prejudice.

12   ## CALLFIRE'S OFFERING

13       CallFire is a provider of various web-based telecommunications services that

14   allow its customers to send their own voice and text messages to recipients of the

15   customers' choosing.  CallFire is an FCC-licensed common carrier whose software

16   platform enables customers to create messages and initiate the transmission of those

17   messages to telephone numbers that the customer selects.  CallFire does not control

18   the content, destination, or timing of its customers' telephone calls or text messages.

19   Instead, CallFire acts as a conduit between its customers and the downstream tele-

20   communications carriers that deliver the messages to the recipients that CallFire's

21   customers select.  By Plaintiff's own admission, CallFire "provides mobile marketing

22   services and text messaging platforms to *its clients*." Compl. ¶ 5 (emphasis added).

23       Because CallFire is a common carrier—and thus has no relationship with the

24   ultimate recipients of the messages its customers choose to send—all of CallFire's

25   customers must agree to CallFire's Terms of Service.  As relevant here, CallFire's

26   Terms of Service contain the following requirements:

27       You agree to familiarize yourself with and abide by all applicable local,

28

state, national and international laws and regulations and are solely responsible for all acts or omissions that occur under your account, including without limitation the content of the messages and broadcasts transmitted through the CallFire Services. . . .

You further agree that CallFire is, under no circumstances, responsible for the contents and/or accuracy of your messages or broadcasts and CallFire will only transmit them on a basis of good faith that you use the Services in accordance with these Terms. . . . CallFire will not be liable for any misuse of the Services by you. CallFire, Terms of Service, https://www.callfire.com/legal/terms.

CallFire also requires its customers to agree to the following terms:

"*You* further agree that any individuals requesting "Do-Not-Call" ("DNC") status shall immediately be placed on *your* DNC accounts list and *you* further agree that *you* will not initiate any subsequent messages or broadcasts to any individuals after they request DNC status." *Id.* (emphasis added).

As CallFire's Terms of Service show, it is CallFire's customers who bear the responsibility for whether a message is sent, when that message is sent, and what that message says. As a common carrier, CallFire's role in the transmission of text messages is limited: CallFire receives instructions from a customer regarding the time and date at which a particular message is to be transmitted, and once the customer initiates that text message, CallFire then transmits the message in accordance with the customer's instructions to downstream telecommunications carriers. At no point in the transmission process does CallFire have any role in initiating the text message.

As a condition of using CallFire's platform, CallFire requires each of its customers to comply with the TCPA. *See id.* But because CallFire serves only as a common carrier, and thus does not initiate communications, its customers bear the

1   ultimate responsibility of complying with the TCPA.

2         CallFire also requires its customers to respect opt-out requests. *See id.* But it

3   is important to note that, when a consumer sends an opt-out request to a particular

4   phone number, that request may not opt the recipient out of messages from all Call-

5   Fire customers who use that number. This is because CallFire's customers some-

6   times share telephone numbers and common short codes to transmit messages to their

7   designated recipients. As a result, a recipient could receive multiple messages from

8   a single phone number or short code, even where each of those messages was initiated

9   by a different CallFire customer. For example, imagine that CallFire Customer A

10  and Customer B share the short code 111-11. Customer A uses 111-11 to initiate a

11  message to a designated recipient. The recipient of that message then responds to

12  111-11 with an opt-out request. That recipient will be opted out of messages sent by

13  Customer A. That recipient may, however, continue to receive messages from 111-

14  11 that are initiated by Customer B. This is because a recipient's revocation of con-

15  sent to receive messages runs to the initiator of those messages*, not* to the phone

16  number or short code used to send the messages. Otherwise, an initiator could simply

17  change their phone number in response to an opt-out and begin messaging again.

18  ## SUMMARY OF PLAINTIFF'S ALLEGATIONS

19        Plaintiff's conclusory allegations fail to establish the requisite causal relation-

20  ship between CallFire and the text messages Plaintiff received; he accordingly states

21  no cognizable claim for relief under the TCPA. While Plaintiff rotely alleges that

22  CallFire "made" unsolicited text messages, *see, e.g.*, Compl. ¶ 10, nothing in Plain-

23  tiff's Complaint comes close to linking CallFire to the messages he received. The

24  only mention of CallFire comes in the form of opt-out confirmation texts, which al-

25  legedly contained the phrase "CallFire Alerts." *Id.* ¶¶ 14, 16. That mere mention of

26  CallFire's name in a confirmatory opt-out message, however, does not establish that

27  CallFire *initiated* the messages at issue, a necessary component of TCPA liability.

28        As Plaintiff recognizes, "CallFire is a cloud telephony services provider that

provides mobile marketing services and text messaging platforms to its clients." *Id.*
¶ 5. Apparently unbeknownst to Plaintiff, this statement explicitly acknowledges that
CallFire is merely a platform that enables customers to initiate text messages; Call-
Fire does not—and cannot—initiate text messages itself.  In spite of this dispositive
fact, Plaintiff persists in claiming, without support, that CallFire sent unsolicited tel-
emarketing messages.  *See id.* ¶ 10.  But just paragraphs later, Plaintiff admits that
CallFire merely "transmitted" its customers' message.  *Id.* ¶ 36.  Plaintiff's own self-
contradictions and inability to keep the facts straight underscore how divorced his
allegations are from the reality of how CallFire's system operates.

Plaintiff further alleges that, in February and March of 2019, CallFire sent him
messages advertising health insurance and home warranty plans.  *See id.* ¶¶ 12–15.
Plaintiff claims that he responded to the first two messages by texting the word
"Stop," and he then received messages confirming his opt-out that began with the
phrase, "CallFire Alerts."  *Id.* ¶¶ 13–18.  The only other allegation Plaintiff offers to
link CallFire to these messages is his unsupported claim that the number that sent
these messages, 670-76, is "CallFire's . . . shortcode."  *Id.* ¶ 15.  Plaintiff provides
no basis for his theory that 670-76 belongs to CallFire; he merely assumes it to be so.

Based on these tenuous allegations, Plaintiff claims that CallFire violated the
TCPA.  *See id.* ¶ 43.  Plaintiff alleges two distinct violations of that statute:  (1) ini-
tiating telemarketing messages without consent, *see id.* ¶¶ 35–46, and (2) violating
the national do-not-call registry, *see id.* ¶¶ 47–57.   Both causes of action, however,
require Plaintiff to establish that CallFire *made* or *initiated* the messages he received.
*See* 47 U.S.C. § 227(b)(1) ("It shall be unlawful for any person . . . to *make* any
call . . . using any automatic telephone dialing system . . . ." (emphasis added)); 47
C.F.R. § 64.1200(c) ("No person or entity shall *initiate* any telephone solicitation
to . . . [a] residential telephone subscriber who has registered his or her telephone
number on the national do-not-call registry . . . ." (emphasis added)).  This he has not
done, and indeed cannot do, because CallFire, as a matter of law, does not initiate

text messages.

Apparently recognizing the inadequacy of his direct allegations against Call-Fire, Plaintiff attempts to impute the conduct of CallFire's customers onto CallFire. He claims that CallFire "was and remains fully aware that unsolicited text messages are being made to consumers' cellular telephones through its own efforts and through the efforts of its agents." *Id.* ¶ 6; *see also id.* ¶ 9. Plaintiff does not, however, explain what these "efforts" were or how CallFire has knowledge of its customers allegedly unlawful acts. Plaintiff's Complaint amounts to nothing more than boilerplate claims and preferred assumptions, which are precisely the kind of conclusory allegations that Rule 12(b)(6) prohibits. The Court should dismiss this case with prejudice.

## ARGUMENT

## I.   PLAINTIFF'S CONCLUSORY ALLEGATIONS ARE INSUFFICIENT TO STATE A CLAIM AGAINST CALLFIRE

### A.   Legal Standard for Dismissal Under Rule 12(b)(6)

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Plaintiff's factual allegations must "give fair notice," "enable the [defendant] to defend itself effectively," and plead sufficient details to ensure that it is "not unfair to require the [defendant] to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B.   CallFire Has No TCPA Liability As A Matter of Law

As discussed in detail below, CallFire cannot be held liable under the TCPA for three independent reasons: (1) CallFire does not initiate text messages; (2) CallFire is not and does not use an ATDS; and (3) CallFire is a common carrier.

*First*, Plaintiff does not plausibly plead that CallFire initiated the text messages. *See infra* Part II. The TCPA imposes liability only on those who *initiate* calls. As courts in this Circuit have recognized, CallFire merely transmits messages that its *customers* initiate. Neither Plaintiff's single allegation that CallFire owned the short code used to send the texts, nor his claim that CallFire's name was mentioned in the confirmatory opt-out texts, plausibly establish that CallFire initiated those messages.

Because do-not-call registry liability similarly attaches only to the initiator of messages, Plaintiff's do-not-call list claim also fails. *See infra* Part III. And Plaintiff's allegation that he opted out of receiving messages does not salvage this claim. *See infra* Part IV. CallFire did not initiate the messages that allegedly caused injury, so Plaintiff's alleged opt-out is irrelevant. But even if CallFire did initiate the messages, confirmatory opt-out texts do not confer TCPA liability.

*Second*, Plaintiff cannot satisfy his burden of pleading the use of an ATDS. *See infra* Part V. Plaintiff's offerings on this point consist solely of a recital of the statutory elements of an ATDS, but courts in this district and elsewhere have held that such conclusory allegations are insufficient to survive a motion to dismiss. Further, courts across the country have held that CallFire is not an ATDS as a matter of law. Since CallFire is not—and does not use—an ATDS, it cannot incur TCPA liability.

*Third*, the FCC and the Ninth Circuit have affirmed that common carriers like CallFire do not initiate text messages, and thus they cannot be subject to TCPA initiator liability. *See infra* Part VI.

For all of these reasons, Plaintiff's Complaint is insufficient as a matter of law, and it should accordingly be dismissed with prejudice.

## II.   PLAINTIFF HAS NOT AND CANNOT ALLEGE THAT CALLFIRE INITIATED THE TEXT MESSAGES AT ISSUE IN THIS CASE

Plaintiff's Complaint must be dismissed with prejudice because he cannot show as a matter of law that CallFire makes or initiates text messages. Plaintiff's

apparent theory of the case is that any entity remotely related to the transmission of a text or call may be held liable under the TCPA.  This theory, however, is foreclosed by the statutory text, FCC guidance, and well-settled case law.  The TCPA was intended to apply only "to the persons *initiating* the telephone call or sending the message and do[es] not apply to the common carrier or other entity that transmits the call or message and that is not the originator or controller of the content of the call or message." *Couser v. Pre-paid Legal Services, Inc.*, 994 F. Supp. 2d 1100, 1103–04 (S.D. Cal. 2014) (quoting S. Rep. No. 102-178, 1991 U.S.C.C.C.A.N. 1968, 1977); *see also* 47 U.S.C. § 227(b)(1)(A) ("It shall be unlawful for any person . . . to *make* any call . . . .") (emphasis added); *Rinky Dink, Inc. v. Electronic Merchant Systems*, No. C13-1347-JCC, 2015 WL 778065 at *4 (W.D. Wash. Feb. 24, 2015) (citing *Couser*, 994 F. Supp. 2d at 1103–04).

At the motion to dismiss phase, courts across the country have routinely rejected plaintiffs' TCPA claims where the defendant was not an initiator of the communications at issue.  *See, e.g.*, *Naiman v. Freedom Forever, LLC*, No. 19-cv-00256, 2019 WL 1790471, at *3 (N.D. Cal. Apr. 24, 2019); *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-cv-07129, 2018 WL 1524067 (N.D. Cal. Mar. 28, 2018), *appeal pending*; *McKenna v. WhisperText*, No. 5:14-cv-00424, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015); *Warciak v. Nikil, Inc.*, No. 16-c-05731, 2017 WL 1093162, at *3 (N.D. Ill. Mar. 23, 2017) (collecting cases); *Canary v. Youngevity International, Inc.*, 5:18-cv-03261, 2019 WL 1275343 (N.D. Cal. Mar. 20, 2019); *Mendez v. C-Two Group, Inc.*, No. 3:13-cv-05914, Order Granting Defendant mobileStorm, Inc.'s Motion to Dismiss (N.D. Cal. Apr. 21, 2014) (dismissing action against software provider because plaintiff failed to allege that defendant controlled the initiation of its customers' messages); *Warciak v. Subway Restaurants, Inc.*, No. 1:16-cv-08694, 2019 WL 978666 (N.D. Ill. Feb. 28, 2019), *appeal filed*; *Clark v. Avatar Technologies PHL, Inc.*, No. H-13-2777, 2014 WL 309079 (S.D. Tex. Jan. 28, 2014).  Here, CallFire offers a cloud-based communications platform that allows third parties to

1   initiate calls or messages.  CallFire does not initiate communications, and it in no

2   way controls their content, recipients, or timing.  CallFire is therefore not an "initia-

3   tor" of its users' messages or calls and thus cannot be subject to liability under the

4   TCPA as a matter of law.

5        In fact, the Southern District of California has addressed the sufficiency of

6   nearly identical allegations against CallFire and held that these allegations were "in-

7   sufficient to state a claim under the TCPA."  *Kauffman v. CallFire, Inc.*, No. 3:14-

8   cv-1333, 2014 WL 12778843, at *2 (S.D. Cal. Sept. 9, 2014).  In *Kauffman*, the

9             "[p]laintiff's complaint allege[d] that he received un-

10            wanted text messages and that, on information and belief,

11            [CallFire] was the sender of these messages.  It state[d]

12            that some of the messages came from a number that be-

13            longs to [CallFire]."  *Id.*

14  The court dismissed the plaintiff's complaint on the ground that "[t]hese statements,

15  without further elaboration, are insufficient to state a claim under the TCPA."  *Id.*

16       Plaintiff's allegations suffer from the very same deficiencies as the allegations

17  in *Kauffman*.  Like the *Kauffman* plaintiff, Plaintiff alleges that he received unwanted

18  text messages, and he asserts that CallFire sent those messages.  *See* Compl. ¶¶ 12,

19  15, 17.  He also alleges that the messages came from a number that belongs to Call-

20  Fire.  *See id.*   Like the complaint in *Kauffman*, Plaintiff's Complaint "do[es] not

21  explain how Plaintiff knew that [CallFire] placed the text messages."  *Kauffman*,

22  2014 WL 12778843, at *2.  As the *Kauffman* court properly held, these formulaic

23  recitals of the elements of a TCPA cause of action are insufficient as a matter of law.

24  **A.   The FCC Has Defined What It Means To Be An "Initiator," And**
25  **     CallFire Does Not Meet That Definition**

26       As a communications platform, CallFire's practices are regulated by the FCC.

27  In 2015, the FCC clarified that companies like CallFire, who provide cloud-based

28

services that transmit others' text messages, are not liable for TCPA violations because they generally do not "make" calls. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961 (2015) [hereinafter *TCPA Declaratory Ruling*].

In that 2015 ruling, the FCC reaffirmed that "Congress . . . put the responsibility for compliance with the [TCPA] directly on the party that 'makes' or 'initiates' automated and prerecorded message calls." *Id.* ¶ 29, at 7980. A platform provider "does not make or initiate a text when [its customer] merely uses the [software]" to initiate messages that *the customer or user controls. Id.* ¶ 25, at 7978. The FCC explained that a provider, like CallFire, is not an "initiator" where the "app user determines whether to send the . . . messages" and the platform provider "*does not control* the recipients, timing, or content" of the messages. *Id.* ¶¶ 31, 33, at 7981–82 (emphasis added). A provider that "exercises no discernible involvement in deciding whether, when, or to whom [a message] is sent, or what [the message] says" has *no* TCPA liability. *Id.* ¶ 32, at 7981. The FCC further stated:

> [T]he app user's actions and choices effectively program the cloud-based dialer to such an extent that he or she is so involved in the making of the call as to be deemed the initiator of the call. [The provider] is not the maker or initiator of the . . . text messages because it is not programming its cloud-based dialer to dial any call, but "merely ha[s] some role, however minor, in the causal chain that results in the making of a telephone call."

*Id.* ¶ 37, at 7984 (third alteration in original) (quoting *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, ¶ 26, at 6583 (2013)).

For example, the FCC concluded that an app called TextMe did not have TCPA liability because an app user was "the initiator of the call." *Id.* ¶ 37, at 7984. TextMe served as a messaging app that allowed users to send an invitational text message to their contact list to join the app. *See id.* ¶ 36, at 7983. To send this

1    invitational message, a user had to tap an invite button, choose contacts to receive

2    the invitation, and select another button to send the invitation. *See id.* TextMe would

3    then transmit the text message invitation, which included TextMe-provided text ask-

4    ing invitees to download TextMe's app. See id. The FCC decided that, even though

5    TextMe outlined the requisite steps its users needed to take to send the message, and

6    even though TextMe included its own content in the message, the fact that there were

7    "affirmative choices by the app user" meant that the app user, not TextMe, initiated

8    the text messages. *Id.* ¶ 37, at 7984.

9        As a cloud-based transmitter of text communications that does not craft mes-

10   sages or determine recipients of text messages, CallFire plays the *minor role* in the

11   causal chain of communications that the FCC has explicitly exempted from TCPA

12   liability. Much like users of TextMe, CallFire users must decide whether to send a

13   text message and to whom to send that message. And the CallFire user makes the

14   ultimate choice to push the send button. In fact, CallFire has an even more remote

15   relationship to the initiation of text messages than TextMe did because, unlike

16   TextMe, CallFire has no input on the content of its customers' messages. *See Kauff-*

17   *man v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1048 (S.D. Cal. 2015) (hereinafter

18   "*Kauffman II*") ("CallFire's degree of involvement in sending text messages to Plain-

19   tiff was even smaller than TextMe's involvement in sending invitational text mes-

20   sages."). Thus, under the FCC's ruling, if TextMe did not have TCPA liability, Call-

21   Fire surely cannot.

22       **B.    Federal Courts Have Upheld The FCC's View That Cloud-Based
             Platform Providers Are Not "Initiators" Under The TCPA**

23
         Federal courts have consistently upheld the FCC's clear definition of TCPA

24
     "initiation."[1] Citing the 2015 ruling, courts have repeatedly concluded that software

25
     ───────────────
26   [1] This consistency among federal courts and the FCC should come as no surprise,
     given that the Hobbs Act, in conjunction with the Federal Communications Act, man-
     dates that district courts apply the FCC's interpretation of the TCPA, unless a court
27   of appeals has invalidated that interpretation. *See* 28 U.S.C. § 2342; 47 U.S.C.
     § 402(a); *Meeks*, 2018 WL 1524067, at *3; *Pacific Bell v. Pac West Telecomm, Inc.*,
28   325 F.3d 1114, 1125 (9th Cir. 2003) ); *Reardon v. Uber Technologies, Inc.*, 115 F.
     Supp. 3d 1090, 1097 (N.D. Cal. 2015). The Ninth Circuit has not invalidated the

application providers like CallFire are not liable for unlawful messaging made by the applications' subscribers, except in the unusual circumstance where the service provider actually controls the content, timing, and recipients of its messages.

In *Kauffman II*, the court thoroughly discussed the FCC's 2015 ruling and determined that CallFire was not an "initiator" because it "required its users to take affirmative steps to determine whether, when, and to whom they would send text messages," and its customers had to "create their own telephone contact lists." 141 F. Supp. 3d at 1048.  Similarly, in *Payton v. Kale Realty, LLC*, the court applied the FCC's definition of "initiate" to hold that defendant VoiceShot was not an initiator on the grounds that it "did not have any role in creating the content of the text message allegedly received by [plaintiff]," and VoiceShot required its customers to "specify the telephone numbers to which the message will be transmitted." 164 F. Supp. 3d 1050, 1054, 1057 (N.D. Ill. 2016); *see also McKenna*, 2015 WL 5264750.

This precedent makes clear that Plaintiff has not sufficiently pleaded facts to support his conclusion that CallFire initiated the messages he received.  Plaintiff's unsupported allegations that CallFire "made" the messages do not bring his claims into the realm of plausibility.  Compl. ¶¶ 9–10.  As the FCC's 2015 Ruling made clear, CallFire's  customers "make" and "initiate" messages; CallFire does not.  Indeed, as Plaintiff himself admits, CallFire merely "transmitted" the messages at issue in this case, and mere transmission is insufficient to support TCPA liability.  *Id.* ¶ 36.

### C.   Plaintiff Does Not—And Cannot—Plead That CallFire Is An "Initiator"

Like the numerous service providers discussed above—including CallFire itself—that have been deemed immune from TCPA liability by the FCC and federal courts, CallFire is merely the provider of a communications transmission service, and mere transmission is not actionable under the TCPA.  Plaintiff cannot be permitted to sue every entity in the call flow in the hopes of surviving a motion to dismiss and

"initiate" portion of the TCPA Declaratory Ruling, and thus, as *Meeks* observed, district courts within the Ninth Circuit are bound by the FCC's interpretation.

then sort out the facts later, after costly discovery.

Plaintiff pleads no factual allegations to suggest that CallFire had any involvement in "selecting the content, timing, and recipients" of the text messages he received, as is required by law to support TCPA liability. *Kauffman II*, 141 F. Supp. 3d at 1050. In the absence of pleadings showing "a high degree of involvement" in the making of a text message, or "actual notice of an illegal use and failure to take steps to prevent [illegal] transmissions"—of which Plaintiff here pleads none—service providers are not deemed to have initiated a text message. *Rinky Dink*, 2015 WL 778065, at *4 (citation omitted).

In short, CallFire's actions taken for transmission purposes are outside the scope of the TCPA. If such third party communications carriers were subject to the TCPA, then every phone company that transmits or processes text message communications across the globe would be responsible for any unlawful text message that their customers craft and send. Fortunately, both the TCPA and the Ninth Circuit have foreclosed that absurd result.

## III. BECAUSE CALLFIRE DID NOT INITIATE ANY TEXT MESSAGES AS A MATTER OF LAW, PLAINTIFF'S DO-NOT-CALL REGISTRY CLAIM MUST FAIL

Plaintiff's claim based on an alleged violation of the do-not-call registry suffers from the same fatal flaw as his other TCPA claim: CallFire does not initiate text messages and thus cannot be subject to TCPA liability. Plaintiff alleges a violation of 47 U.S.C. § 227(c), as implemented by 47 C.F.R. § 64.1200(c), but as Plaintiff admits, that provision applies only to those who "initiate any telephone solicitation." 47 C.F.R. § 64.1200(c) (2018) (emphasis added); Compl. ¶ 49. Similarly, Plaintiff recognizes that 47 C.F.R. § 64.1200(d), which prohibits the initiation of any call for telemarketing purposes to a residential telephone subscriber, applies only to those who "initiate" a call. Compl. ¶ 50. And courts agree:

[The initiator] is the only company that can be directly liable under

[§ 64.1200] subsection (c) for initiating a telemarketing call to an individual on the national DNC registry.  Similarly, [the initiator] is the only company that can be directly liable under [§ 64.1200] subsection (d) for initiating a telemarketing call without first implementing the requisite policies and procedures.

*Simmons v. Charter Communications, Inc.*, 222 F. Supp. 3d 121, 132 (D. Conn. 2016) *aff'd* 686 F. App'x 48 (Mem.) (2d Cir. 2017) (citation omitted); *see also Naiman*, 2019 WL 1790471, at *4 (dismissing claim based on national do-not-call registry because the plaintiff "fail[ed] to plead *any* facts giving rise to a reasonable inference that [the defendant], or an entity under its control, made the calls at issue").

As discussed at length in Part II, *supra*, CallFire did not initiate any messages. Those arguments apply in equal force to Plaintiff's do-not-call claim.  Much like the plaintiff in *Naiman*, Plaintiff has provided no allegations to support his do-not-call claim other than his conclusory assertion that CallFire sent the messages.  Plaintiff's comprehensive citation to the procedures necessary for initiating telemarketing calls and his formulaic recitation of the elements of a do-not-call registry violation cannot salvage his claim because those procedures and elements apply only to the *initiator* of the text messages, which CallFire most assuredly is not.

## IV. PLAINTIFF'S CLAIMS THAT HE OPTED OUT OF FURTHER MESSAGES BY RESPONDING "STOP," AND THAT HE NEVER CONSENTED TO RECEIVING TEXT MESSAGES, ARE IRRELEVANT BECAUSE CALLFIRE DID NOT INITIATE ANY MESSAGES

Because CallFire does not initiate messages, CallFire cannot have TCPA liability for allegedly lacking Plaintiff's consent.  The TCPA prohibits the *making* of any call, "other than a call . . . *made* with the prior express consent of the called party."  47 U.S.C. § 227(b)(1)(A) (emphasis added).  Federal regulations sanction those who "*initiate* any telephone call (other than a call *made* . . . with the prior express consent of the called party)."  47 C.F.R. § 64.1200(a)(1) (2018) (emphasis added).  And the Ninth Circuit has clarified that, "[a] call or text is not unsolicited . . .

1    where the recipient gave the *sender* 'prior express consent.'" *Van Patten v. Vertical*

2    *Fitness Group, LLC,* 847 F.3d 1037, 1042 (9th Cir. 2017) (emphasis added) (quoting

3    47 U.S.C. § 227(b)(1)(A)).  As this settled law makes clear, an entity cannot be liable

4    for lack of consent if it did not *make* or *initiate* the text message in question.  Initiation

5    is a necessary predicate to the consent requirement, and it is notoriously absent here.

6         As discussed at length in Part II, supra, CallFire is not an initiator.  Therefore,

7    Plaintiff's allegations that CallFire lacked his consent to send messages or that Plain-

8    tiff opted out of receiving messages from CallFire are irrelevant. CallFire did not

9    need consent because it did not send the messages.  Plaintiff accordingly cannot state

10   a claim based on lack of consent as a matter of law.

11        Plaintiff's allegations that he received messages containing the phrase "Call-

12   Fire Alerts" similarly do not confer any liability on CallFire.  Compl. ¶ 18.  That the

13   message purported to name CallFire in no way means that CallFire initiated those

14   messages.  In fact, it makes sense that the messages might reference CallFire because

15   CallFire hosts a platform that transmits—but does not initiate—text messages.

16        Even assuming *arguendo* that CallFire *did* initiate the messages containing the

17   phrase "CallFire Alerts," those messages served only to confirm Plaintiff's alleged

18   opt out, and they are accordingly not actionable under the TCPA as a matter of law,

19   regardless of whether the initial text messages were sent without Plaintiff's consent.

20   *See Duguid v. Facebook, Inc.*, No. 15-cv-00985, 2016 WL 1169365, at *5 n.3 (N.D.

21   Cal. Mar. 24, 2016) (citing *inter alia TCPA Declaratory Ruling* ¶ 57, at 7994 (de-

22   scribing a ruling in which the FCC "concluded that a one-time text confirming a con-

23   sumer's request to opt out of future calls did not violate the TCPA")); *see also Derby*

24   *v. AOL, Inc.*, 15–cv–00452, 2015 WL 3477658, at *5–*7  (N.D. Cal. June 1, 2015)

25   (discussing similar cases in California federal courts and FCC guidance, and con-

26   cluding that the weight of authority supports the conclusion that "the TCPA does not

27   impose liability for a single, confirmatory text message").

28        Although Plaintiff alleges that he received *two* confirmatory messages, rather

than a single message, those messages confirmed opt outs from texts sent by two different initiators.  As discussed in "CallFire's Offerings," *supra*, CallFire customers sometimes share short-codes, and thus, even if a recipient of a text message opts out of texts from one CallFire customer, he might continue to receive text messages from a second CallFire customer using the same short-code.  This is because the second CallFire customer would not have notice of the opt-out sent to the first CallFire customer, despite the messages appearing to come from the same telephone number.  Thus, even assuming that CallFire did, in fact, transmit the two opt out messages that Plaintiff received, CallFire is not liable under the TCPA because each message was associated with a different CallFire customer.

## V.    CALLFIRE IS NOT AN ATDS AS A MATTER OF LAW

Plaintiff's ATDS allegations against CallFire merely parrot the language of the TCPA, and a court in this district—and this division—has held that such allegations are insufficient as a matter of law.  In *Hulsey v. Peddle, LLC*, CV 17-3843, 2017 WL 8180583 (C.D. Cal. Oct. 23, 2017), the plaintiff alleged that the defendant used an ATDS to send her text messages, and that the ATDS:

> has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention, and that it includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous texts message calls simultaneously.

*Id.* at *2.  The court dismissed this claim on the ground that these "allegations consist solely of paraphrases of the definition of ATDS as set forth in the TCPA."  *Id.*; *see also Kauffman*, 2014 WL 12778843, at *2 (holding that a complaint against CallFire that alleged "calls were placed via an automatic telephone dialing system and recite[d] the definition of such a system" failed to state a claim); *Freidman v. Massage Envy Franchising*, Civ. No. 3:12-cv-02962-L-RBB, 2013 WL 3026641 at *2–*3

1   (S.D. Cal. Jun. 13, 2013) (concluding that two TCPA plaintiffs failed to state a claim

2   because their complaint contained no details to support their allegation that an ATDS

3   was utilized). Plaintiff's Complaint contains nearly identical, conclusory allegations

4   that merely recite the TCPA's definition of ATDS. *See* Compl. ¶¶ 7, 36–38.

5         It is worth noting that Plaintiff's counsel is well aware that such boilerplate

6   allegations are insufficient as a matter of law to state a claim under the TCPA because

7   he is the one who raised them while serving as counsel to the plaintiff in *Hulsey*.

8   Plaintiff's counsel has simply copied and pasted the same cookie-cutter allegations

9   that were dismissed in *Hulsey* in an attempt to try his luck again in this case. Why

10  he thinks these same legally insufficient allegations will pass muster here is curious

11  indeed, but this Court should dismiss Plaintiff's Complaint for precisely the reasons

12  articulated by the court in *Hulsey*.

13        Even if Plaintiff had sufficiently alleged an ATDS—which he did not, *see* Part

14  I, *supra*—courts across the country have held that CallFire is not an ATDS as a matter

15  of law. *See, e.g.*, *Luna v. Shac, LLC*, 122 F. Supp. 3d 936, 940–42 (N.D. Cal. 2015)

16  (holding that CallFire is not an ATDS); *Ramos v. Hopele of Fort Lauderdale, LLC*,

17  334 F. Supp. 3d 1262, 1275 (S.D. Fla. 2018) ([T]he EZ-Texting [(CallFire)] system

18  used by [the initiator] was not an ATDS."); *Duran v. La Boom Disco, Inc.*, No. 17-

19  cv-6331, 2019 WL 959664, at *4–*11 (E.D.N.Y. Feb. 25, 2019). Indeed, no court

20  to address the issue has held otherwise. CallFire, as a matter of law, is not an ATDS,

21  and Plaintiff's Complaint should be dismissed on this ground alone.

22        The Ninth Circuit's recent decision in *Marks v. Crunch San Diego, LLC*, 904

23  F.3d 1041 (9th Cir. 2018), likewise does not salvage Plaintiff's Complaint. *Marks*

24  does not change the well-settled rule that a TCPA plaintiff must allege more than just

25  the unwanted receipt of "generic" or "impersonal" texts sent from a single number to

26  a single customer to show that an "automatic" system was used. *See Freidman*, 2013

27  WL 3026641, at *2; *see also Naiman*, 2019 WL 1790471, at *3 (dismissing at the

28  12(b)(6) stage an ATDS claim post-*Marks* on the grounds that the ATDS allegations

were conclusory); *Armstrong v. Investor's Business Daily, Inc.*, No. CV 18-2134, 2018 WL 6787049, at *9 (C.D. Cal. Dec. 21, 2018) (dismissing ATDS allegations post-*Marks* because "the Court does expect a plaintiff to plead enough circumstantial or indirect allegations—content of messages, context and manner in which they were sent, existence of similar messages, frequency of messages, etc.—that would create an inference that an ATDS was used"). Beyond a threadbare recital of the statutory elements of an ATDS, Plaintiff has not pleaded any facts to suggest that an ATDS was used to send the text messages at issue here.

## VI.   AS A COMMON CARRIER, CALLFIRE MERELY TRANSMITS ITS CUSTOMERS' MESSAGES AND THUS IS NOT SUBJECT TO TCPA INITIATOR LIABILITY

Plaintiff's Complaint should be dismissed on the independent ground that CallFire is a common carrier, and is thus immune from TCPA liability as a matter of law. "'[U]sers of [telecommunications] services, not the carriers providing the services, [are] held liable' under the TCPA." *Kauffman*, 141 F. Supp. 3d at 1048 (alterations in original) (quoting *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8776 n.83 (1992)); *see also Linlor v. Five9, Inc.*, No. 17-CV-00218, 2017 WL 2972447 (S.D. Cal. July 12, 2017); *Payton*, 164 F. Supp. 3d at 1055 ("[C]ommon carriers are immune from TCPA liability unless they have a 'high degree of involvement or actual notice of an illegal use and fail[] to take steps to prevent such transmissions.'" (quoting *In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, ¶ 54, at 8780 (1992)). "[W]hen a text messaging service requires its customers to determine the content, timing, and recipients of a text message, then the service has not initiated the message and is merely serving as a carrier." *Kauffman*, 141 F. Supp. 3d at 1047–48 (citing *TCPA Declaratory Ruling* at 7983–84 and *Rinky Dink*, 2015 WL 778065, at *7). CallFire plainly qualifies as a common carrier and is thus immune from TCPA liability.

### A.   CallFire Is A "Common Carrier"

In assessing whether an entity is a common carrier, courts examine:

"(1) whether the carrier 'holds himself out to serve indifferently all potential users'; and (2) whether the carrier allows 'customers to transmit intelligence of their own design and choosing.'" *U.S. Telecom Ass'n v. FCC*, 295 F.3d 1326, 1329–32 (D.C. Cir. 2002); *see also Qwest Communications Corp. v. City of Berkley*, 146 F. Supp. 2d 1081, 1095 (N.D. Cal. 2001) ("The Supreme Court defined a common carrier as one that 'makes a public offering to provide [communications facilities] whereby all members of the public who choose to employ such facilities may communicate or transmit intelligence of their own design and choosing.'" (quoting *FCC v. Midwest Video Corp.*, 440 U.S. 689, 701 (1979)).  CallFire easily satisfies both criteria.

*First*, CallFire offers its telephone service indiscriminately and on generally applicable terms to anyone that registers on its publicly available websites.  Plaintiff does not, and cannot, make any contrary claim.  *Second*, CallFire's service allows its subscribers to transmit the content of their own design and choosing. Indeed, as Call-Fire's Terms of Service provide, "[y]ou further agree that CallFire is, under no circumstances, responsible for the contents and/or accuracy of your messages or broadcasts and CallFire will only transmit them on a basis of good faith that you use the Services in accordance with these Terms."   CallFire, Terms of Service, https://www.callfire.com/legal/terms.  Plaintiff does not, and cannot, make any contrary claim.  CallFire thus satisfies both elements of the definition of common carrier.

Courts in this Circuit have agreed, holding that "CallFire is a common carrier, and therefore not subject to liability for alleged violations of the [TCPA]." *Rinky Dink*, 2015 WL 778065, at *1; *see also Kauffman II*, 141 F. Supp. 3d at 1050.  Call-Fire, like all other major service providers, has a large number of active telephone customers, each initiating their own messages to recipients of their choosing, at the time of their choosing.  It would be an impossible task for CallFire—or any other common carrier—to verify the precise relationship between its customers and the individuals CallFire's customers choose to call.  Thus, the FCC and courts in this

Circuit have conferred immunity on common carriers like CallFire who simply transmit their customers' telephone calls and text messages.

### B.   CallFire Is Not Subject To Any Exceptions To The Rule Against Common Carrier Liability

The FCC has long exempted common carriers from liability for their subscribers' messages, unless they have a "high degree of involvement" or "actual notice" of the illegal use of their services.  *In the Matter of Enforcement of Prohibitions Against the Use of Common Carriers for the Transmission of Obscene Materials*, Memorandum Opinion, Declaratory Ruling and Order, 2 FCC Rcd. 2819, ¶ 9, at 2820 (1987) [hereinafter *Common Carrier Immunity Order*] ("[I]t is unlikely that a telephone common carrier will ever possess sufficient knowledge of an illegal use of its facilities to be held liable [therefor]. . . .").[2]  In this case, Plaintiff does not, and cannot, plead the high degree of involvement or actual notice required to overcome the presumption in favor of immunity for common carriers.  *First*, CallFire has no involvement in determining the "content, timing, and recipients of a text message"; instead, "the affirmative choices" made by CallFire's customers govern.  *TCPA Declaratory Ruling* ¶ 37, at 7984; *Kauffman II*, 141 F. Supp. 3d at 1046.  CallFire thus does not have a "high degree of involvement" in the messages its customers initiate.  *Second*, Plaintiff's conclusory allegation that CallFire knew its customers initiated unsolicited

---

[2]The FCC's *Common Carrier Immunity Order* is an order of general applicability concerning the qualified immunity of all common carriers for any illegal use of their facilities.  In that order, the FCC reaffirmed the long-standing rule that "common carriers have a general obligation to hold out their services to the public on a first-come, first-served basis without regard to content."  *Common Carrier Immunity Order* ¶ 5, at 2819.  The FCC further held that "there must be a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions before any liability is likely to attach" to telephone common carriers.  *Common Carrier Immunity Order* ¶ 9, at 2820.

The FCC explicitly extended common carrier immunity to the TCPA.  *See In the Matter of Rules and Regulations Implementing the TCPA of 1991*, 7 FCC Rcd. 8752, 8776 n.83 (1992) ("[T]he users of the services, not the carriers providing the services, would be held liable, consistent with Congress' policy that carriers not be held responsible for the content of messages transmitted through the network.").

1   messages does not meet the threshold of plausibility. *See, e.g.*, Compl. ¶¶ 6, 9. Plain-

2   tiff provides no details regarding how CallFire had such knowledge, which CallFire

3   customers were violating the law, or what notice CallFire had of its customers' al-

4   legedly unlawful actions.  Plaintiff has accordingly failed to plead that CallFire had

5   actual knowledge of TCPA violations.  The Hobbs Act thus requires this Court to

6   apply the *Common Carrier Immunity Order*, and CallFire's Motion to Dismiss

7   should be granted on this ground alone. *See, e.g.*, *Pacific Bell*, 325 F.3d at 1125.

8                                   <u>**CONCLUSION**</u>

9        For the foregoing reasons, CallFire, Inc. respectfully requests that the Court

10  dismiss Plaintiff's Complaint in its entirety and with prejudice.

11

12  Dated: May 24, 2019                         Respectfully submitted,

13

14

15                          By: */s/ Michael B. Hazzard*
                                 Cheryl L. O'Connor (SBN. 173897)
16                               coconnor@jonesday.com
                                 Ann T. Rossum (SBN. 281236)
17                               atrossum@jonesday.com
                                 JONES DAY
18                               3161 Michelson Drive, Suite 800
                                 Irvine, California 92612-4408
19                               Telephone:  (949) 851-3939
                                 Facsimile:   (949) 553-7539

20                               Michael B. Hazzard (*pro hac vice*)
                                 mhazzard@jonesday.com
21                               JONES DAY
                                 51 Louisiana Avenue, N.W.
22                               Washington, D.C.  20001.2113
                                 Telephone:   +1.202.879.3939
23                               Facsimile:   +1.202.626.1700

24                               Counsel to Defendant
                                 CALLFIRE, INC.
25

26

27

28

CALLFIRE, INC.'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-cv-02874-SVW-MAA