**THE AFTERGOOD LAW FIRM**
Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

**WOODROW & PELUSO, LLC**
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Pro Hac Vice*

*Attorneys for Plaintiff and the Putative Classes*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| **LEE WIGOD**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**CALLFIRE, INC.**, a Delaware corporation,<br><br>Defendant. | Case No. 2:19-cv-02874-SVW-MAA<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: July 15, 2019<br>Time: 1:30 p.m.<br>Judge: Hon. Stephen V. Wilson<br>Place: Courtroom 10A<br><br>Complaint Filed: April 15, 2019 |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................ iii

**I.     INTRODUCTION** .......................................................................1

**II.    SUMMARY OF THE CLAIMS** ..................................................2

**III.   ARGUMENT** ...............................................................................3

      A.   CallFire Is Subject To TCPA Liability As The "Maker" Or "Initiator" Of Autodialed Calls..................................................................4

           1.   Though it presents itself as a common carrier, CallFire is subject to liability because its responses to opt out requests establish notice that further messages would violate the TCPA. ..............4

           2.   Wigod has pleaded sufficient facts demonstrating CallFire's involvement in the making of the text messages at issue to survive a motion to dismiss .........................................................8

      B.   Wigod Has Pleaded Facts To Plausibly Suggest That CallFire's Service Platform Is An ATDS. ..........................................................12

**IV.   CONCLUSION** .........................................................................16

# TABLE OF AUTHORITIES

## CASES

*Armstrong v. Investor's Business Daily, Inc.*, No. CV 18-2134-MWF (JPRx),

    2018 WL 6787049 (C.D. Cal. Dec. 21, 2018) ..............................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).................................................................8–9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)............................................8

*Cedar-Sinai Med. Ctr. V. Nat'l League of Postmasters of U.S.*,

    497 F.3d 972 (9th Cir. 2007) .......................................................................12

*Couser v. Pre-paid Legal Servs., Inc.*,

    994 F. Supp. 2d 1100 (S.D. Cal. 2014) ..............................................6, 11, 12

*Duran v. La Boom Disco, Inc.*, No. 17cv-6331,

    2019 WL 959664 (E.D.N.Y. Feb. 25, 2019) ................................................15

*Fed. Trade Comm'n v. AT&T Mobility LLC*, 883 F.3d 848 (9th Cir. 2018)............5

*Flores v. Adir Int'l, LLC*, 685 Fed. Appx. 533 (9th Cir. 2017) ........................13–14

*Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792 (D. Ariz. 2018) ...................13

*Hulsey v. Peddle, LLC*, No. CV 17-3843 DSF (ASx),

    2017 WL 8180583 (C.D. Cal. Oct. 23, 2017) .............................................16

*Kauffman v. CallFire, Inc.*, No. 3:14-cv-1333-H-DHB,

    2014 WL 12778843 (S.D. Cal. Sept. 9, 2014) ............................................10

*Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044 (S.D. Cal. 2015)....................5–6

*Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM),

    2017 WL 2972447 (S.D. Cal. July 12, 2017) ..........................................5, 11

*Luna v. Shac, LLC*, No. C14–00607 HRL,

    2014 WL 5324291 (N.D. Cal. Oct. 17, 2014).....................................6, 11–12

*Luna v. Shac, LLC*, 122 F. Supp. 3d 936 (N.D. Cal. 2015)....................................15

*Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) .................12–13

*Ramos v. Hopele of Fort Lauderdale, LLC*,

    334 F. Supp. 3d 1262 (S.D. Fla. 2018)...........................................................15

*Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13–1347–JCC,

    2015 WL 778065 (W.D. Wash. Feb. 24, 2015) .........................................5, 6

*Rouse v. Delta Air Lines, Inc.*, No. CIV. 15-1642 PAM/JSM,

    2015 WL 4636726 (D. Minn. Aug. 4, 2015)...............................................14

*Washington v. Six Continents Hotels, Inc.*, No. 2:16-CV-03719-ODW-JEM,

    2018 WL 4092024 (C.D. Cal. Aug. 24, 2018).............................................14

*Weisberg v. Stripe, Inc.*, No. 16-cv-00584-JST,

    2016 WL 3971296 (N.D. Cal. July 25, 2016)..............................................16

**STATUTES, RULES, AND OTHER SOURCES**

*Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30 FCC Rcd. 7961 (2015) .....5–6, 9, 13

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* ..........5, 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff Lee Wigod ("Plaintiff" or "Wigod) brought this class action complaint on behalf of himself and a class of similarly situated individuals, alleging that Defendant CallFire, Inc. ("Defendant" or "Callfire") violated the Telephone Consumer Protection Act ("TCPA") by sending unsolicited, automated text messages to consumers who made explicit stop requests and who registered their phone numbers on the National Do Not Call Registry. In response, Defendant asks the Court to dismiss the Complaint and absolve CallFire of all liability because it supposedly played the role of a "common carrier" and otherwise did not make or initiate the text messages at issue. CallFire further argues that its systems for sending text messages *en masse* do not qualify as an automatic telephone dialing system ("ATDS" or "autodialer") as defined by the TCPA. However, Defendant's arguments present an incomplete picture of the allegations supporting Plaintiff's claims.

Despite CallFire's protestations, Wigod has sufficiently pleaded TCPA violations by Defendant to survive a motion to dismiss. CallFire's assertions that it cannot be liable as an initiator of the messages at issue fail for two reasons. First, even if the Court were to accept that Defendant is a common carrier, CallFire's responses to Plaintiff's stop requests (and failure to honor such requests) demonstrate that Defendant had knowledge that its services were being used unlawfully and the continued messages to Plaintiff violated the TCPA. Second, Plaintiff has sufficiently pleaded CallFire's involvement in the sending of unsolicited telemarketing messages so as to raise the claims above the speculative level; the nature of Defendant's relationships with its clients is a fact-intensive inquiry that cannot be properly addressed without discovery, and Wigod has met his

burden to withstand a motion to dismiss. Similarly, Plaintiff has sufficiently pleaded the use of an ATDS to send the text messages at issue. Wigod has not simply recited the statutory requirements—the Complaint contains factual allegations about the texts received that, taken as true, show CallFire's text messaging system to be automated.

Accordingly, and as explained below, the Court should deny Defendant's Motion to Dismiss.

## II.     SUMMARY OF THE CLAIMS

In the Complaint, Plaintiff claims that CallFire violated the TCPA in two ways: (1) by sending unsolicited text messages to consumers registered on the National Do Not Call registry; and (2) by continuing to send unsolicited text messages after consumers made requests for such messages to "STOP." (Compl., ECF 1 at 1–2.) In turn, these allegations support two class-wide causes of action: violation of the TCPA on behalf of the Stop Call Class and violation of the TCPA on behalf of the DNC Registry Class. (*Id.* at 10, 12.) Though the members of these classes may vary, the facts supporting each cause of action are the same.

Plaintiff supported his claims with detailed factual allegations about the text messages received. Wigod first received a message on February 13, 2019, at 11:32 AM, pertaining to an available application for health insurance. (*Id.* ¶ 12.) In accordance with the message's own instructions, Plaintiff replied "Stop." (*Id.* ¶ 13.) Immediately thereafter, Plaintiff received a message beginning with "CallFire Alerts" that seemingly confirmed his opt-out request and informed him that he would "no longer receive any messages." (*Id.* ¶ 14.) Despite this exchange, Wigod received another message the next day, February 14, 2019, relating to a sale of home warranty plans. (*Id.* ¶ 15.) For a second time, Plaintiff replied "Stop," and in return he received another confirmatory opt-out message identical to the first. (*Id.* ¶

16.) But even after his second request, Plaintiff continued to receive telemarketing messages from the same number, one on February 15, 2019, and one on March 11, 2019. (*Id.* ¶ 17.) In addition to these detailed allegations, Wigod provided the Court with screenshots of the text messages received from and sent to short code 670-76, which Plaintiff alleged belongs to CallFire. (*Id.* ¶ 18.) Plaintiff further alleged that he has no relationship with CallFire and never gave CallFire consent to send him telemarketing text messages. (*Id.* ¶ 19–20.)

On behalf of himself and the class, Wigod detailed the harms that these text messages caused, including annoyance, nuisance, disruption of the use and enjoyment of his phone, use of phone memory and battery, and repeated invasion of privacy. (*Id.* ¶ 21–24.) On information and belief, and based in part on the automated nature of the messages received, Plaintiff alleged that the messages were sent using an ATDS with the capability to store lists of phone numbers and dial such numbers *en masse* without human intervention. (*See id.* ¶ 36–38.) Further, for the claims of the DNC Registry class, Wigod alleged that CallFire fails to properly process stop requests and maintain a list of consumers who request not to receive telemarketing messages. (*See id.* ¶ 54.)

## III.   ARGUMENT

Defendant's Motion can be distilled to two principal arguments: (1) CallFire claims that it cannot be liable for TCPA violations, either because it should be immune from liability as a common carrier or because did not "make" or "initiate" the text messages received (Memo. In Support of Mot. to Dismiss, ECF 17-1, at 7–17, 19–22); and (2) CallFire claims that Wigod has not sufficiently pleaded CallFire's use of an ATDS to send the messages at issue. (*Id.* at 17–19.) However, as explained below, neither of these arguments wins the day. With regard to the first argument, Plaintiff has sufficiently pleaded CallFire's involvement in and liability

for making the automated text messages to survive a motion to dismiss, even if the Court were to consider Defendant to be a common carrier. As to the second argument, Plaintiff has adequately pleaded the use of an autodialer to send the text messages, with more than just reference to the statutory requirements. Accordingly, the Court should deny CallFire's Motion to Dismiss and permit this action to proceed to discovery.

**A.   CallFire Is Subject To TCPA Liability As The "Maker" Or "Initiator" Of Autodialed Calls.**

CallFire primarily attempts to avoid liability by claiming that the TCPA does not apply to its actions. That is, Defendant claims it is merely a common carrier, supposedly playing only a "minor role in the causal chain of communication" rather than "making" or "initiating" the texts sent to Plaintiff and the class. (ECF 17-1, at 12.) However, even a common carrier may be held liable for TCPA violations, particularly where, as here, the supposed carrier knowingly allows its clients to use the platform in a manner that violates the law. Further, Plaintiff has sufficiently alleged CallFire's involvement in the calls to withstand a motion to dismiss: while the details of Defendant's relationship with its clients and the calls made will become available through discovery, Wigod has met his pleading requirements at this stage of the litigation. To accept CallFire's assertions over Plaintiff's allegations would defy the standard for considering motions to dismiss. Plaintiff has adequately demonstrated CallFire's liability for the telemarketing messages at issue, and Defendant's Motion should therefore be denied.

**1.   Though it presents itself as a common carrier, CallFire is subject to liability because its responses to opt out requests establish notice that further messages would violate the TCPA.**

Beginning on the first page of its Motion to Dismiss, CallFire carefully describes itself as anything but a telemarketing service: a "cloud services telephony provider" (ECF 17-1 at 1), a "provider of various web-based telecommunications services" (*id.* at 3), a "conduit" between customers and downstream carriers (*id.*), a "cloud-based transmitter" of text messages (*id.* at 12), and, most significantly, a common carrier. (*See id.* at 2, 3, 4, 19–20.)

While many of those designations are merely creative descriptions, the term "common carrier" is a term with legal consequences. As the Ninth Circuit recently pointed out, Congress has never provided a clear definition of the term "common carrier" as it appears in the TCPA. *Fed. Trade Comm'n v. AT&T Mobility LLC*, 883 F.3d 848, 855 (9th Cir. 2018); *see also* 47 U.S.C. § 153(11) (circularly defining a common carrier as "any person engaged as a common carrier for hire"). However, and as CallFire notes in its Motion, courts engage in a two-part inquiry to determine whether an entity is a common carrier: (1) does the entity hold itself out indifferently to all potential users; and (2) does the entity allow customers to transmit messages of their own design and choosing. *Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) (citing *Rinky Dink, Inc. v. Elec. Merch. Sys.*, No. C13–1347–JCC, 2015 WL 778065, at *4 (W.D. Wash. Feb. 24, 2015)); (ECF 17-1 at 19–20.)

Generally, the TCPA does not apply to common carriers. *Rinky Dink*, 2015 WL 778065 at *4. Nevertheless, to express this generality as an absolute rule that that carriers "cannot be subject to TCPA initiator liability" is incorrect. (ECF 17-1, at 8.) A carrier is not exempt from liability if it was "so involved in placing the call as to be deemed to have initiated it." *Kauffman v. CallFire, Inc.*, 141 F. Supp. 3d 1044, 1047 (S.D. Cal. 2015) (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, 30

FCC Rcd. 7961, 7980 (2015) [hereinafter *TCPA Declaratory Ruling*]). In addition to the content or timing of messages, "whether a person who offers a calling platform service for the use of others has knowingly allowed its client(s) to use that platform for unlawful purposes" is a significant factor in determining whether a common carrier was sufficiently involved to be considered an "initiator." *TCPA Declaratory Ruling*, 30 FCC Rcd. at 7980–81; *see also Rinky Dink*, 2015 WL 778065 at *4 (holding that common carriers can be liable under the TCPA with a showing of "a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions").

Here, CallFire's status as a common carrier is unclear and remains subject to determination—the two-part inquiry involving Defendant's offerings and customer capabilities will require discovery, and this question is not fit for determination on a motion to dismiss. *See, e.g.*, *Couser v. Pre-paid Legal Servs., Inc.*, 994 F. Supp. 2d 1100, 1104–05 (S.D. Cal. 2014); *Luna v. Shac, LLC*, No. C14–00607 HRL, 2014 WL 5324291, at *2 (N.D. Cal. Oct. 17, 2014). However, even if the Court were to find that CallFire is a common carrier, Plaintiff has sufficiently alleged Defendant's involvement in the texts to impute TCPA liability. In particular, CallFire's responses to opt-out requests demonstrate notice that Plaintiff revoked consent and thus notice that further texts to Plaintiff were unlawful. As detailed in the Complaint, Plaintiff opted out of marketing text messages from 670-76 with a clear "Stop" request, and a confirmatory message informed Wigod that he had "opted out" of the CallFire Alerts program and would "no longer receive any messages." (ECF 1, at ¶¶ 12–14.) Despite CallFire assuring Plaintiff that he wouldn't receive any more messages, he received one *the next day*. (*Id.* ¶ 15.) Wigod replied "Stop" again, and received the same opt-out confirmation from CallFire. (*Id.* ¶ 16.)

By acknowledging and confirming Plaintiff's opt-out, CallFire demonstrated it had notice that Wigod revoked consent for the text messages. Accordingly, Defendant had notice that further texts would violate the TCPA. Even if the text messages at issue were planned by CallFire customers, CallFire inserted itself into fold, assured Plaintiff that he would no longer receive "*any messages*," and knowingly allowed its customers to continue sending texts to Wigod. This degree of awareness and involvement cannot be ignored as the act of a common carrier—for the purposes of TCPA liability, CallFire's notice and failure to stop the messages are sufficient to extend liability to Defendant as an initiator.

CallFire proffers several arguments as to why, despite failing to honor Plaintiff's request and knowingly sending unlawful messages, it should be immune from suit as a common carrier. First, CallFire claims, without pointing to any authority, that "a recipient's revocation of consent to receive messages runs to the initiator of those messages, *not* to the phone number." (ECF 17-1, at 5.) This contention misses the point. Leaving alone that this claim is not supported by any statute or case law, Plaintiff has alleged that CallFire was the initiator of all the texts he received, as evinced by the confirmatory messages. (*See* ECF 1 at ¶¶ 12–21.) CallFire's involvement extends to each message detailed in Plaintiff's Complaint, and the manner in which revocation of consent "runs" is immaterial.

Defendant also contends that if the Court does not immunize CallFire from liability, "then every phone company that transmits or processes text message communications across the globe would be responsible for any unlawful text message that their customers craft and send." (ECF 17-1, at 14.) This "absurd result" (*id.*) that Defendant forewarns is apocalyptic hyperbole that ignores the obvious limitation to common carrier liability: involvement in making, and notice of, unlawful texts. Plaintiff is not seeking to upend the legal structure of the TCPA,

but to apply it to CallFire because CallFire was sufficiently involved in initiating the messages and was aware of their unlawful nature.

Common carrier or not, Defendant may be held liable for the messages at issue. Though the Court does not yet have enough information to determine whether CallFire is a common carrier, Plaintiff has demonstrated that Defendant knew that Wigod revoked consent and failed to prevent additional, unlawful text messages. Thus, even if the Court labels CallFire a common carrier, it may be held to account as an initiator of unauthorized telemarketing calls. Defendant's Motion to Dismiss should be denied.

>   **2.     Wigod has pleaded sufficient facts demonstrating CallFire's involvement in the making of the text messages at issue to survive a motion to dismiss.**

Beyond the issue of CallFire's common carrier status, Plaintiff has met his burden by pleading allegations to plausibly suggest that Defendant made or initiated the text messages that violated the TCPA. CallFire asks the Court to make premature legal and factual determinations in its favor rather than take Wigod's factual allegations as true, as is the standard on a motion to dismiss. Plaintiff's allegations regarding CallFire's involvement in the unlawful text messages is well above the speculative level, and his Complaint should not be dismissed.

As a reminder, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, factual allegations must be enough to raise relief above the speculative level. *Twombly*, 550 U.S. at 555. The plausibility standard asks for more than a "sheer possibility," but it is "not akin to a probability requirement." *Iqbal*, 556 U.S. at 678. And, while they are not

bound to accept legal conclusions in a complaint, courts "must take all factual allegations in the complaint as true" when ruling on a motion to dismiss. *Id.*

Here, Plaintiff has pleaded sufficient factual allegations to survive a motion to dismiss. The Complaint plausibly suggests that CallFire made or initiated the unlawful telemarketing text messages in question, or, at the very least, was "so involved in the placing of [the text message calls] as to be deemed to have initiated [them]." *TCPA Declaratory Ruling*, 30 FCC Rcd. at 7980–81. Wigod alleges a number of facts that, if taken as true, indicate CallFire's involvement:

- CallFire is fully aware that unsolicited text messages are being sent through its own efforts and the efforts of its agents (ECF 1, at ¶ 6);
- The text message calls were made by or on behalf of CallFire, with CallFire's approval and ratification (*id.* ¶ 9);
- CallFire knowingly received a benefit from the making of such calls (*id.*);
- The shortcode from which Plaintiff received the messages belongs to or is otherwise associated with CallFire (*id.* ¶¶ 12, 15, 17); and
- CallFire sent confirmatory texts acknowledging (and seemingly accepting) Plaintiff's attempts to opt out of the unsolicited texts. (*id.* ¶¶ 15–17.)

Plaintiff also provided screenshots of the messages that he received from and sent to CallFire's shortcode to reinforce his claims. (*Id.* ¶ 18.) Taken as true, these factual allegations raise the claims above the speculative level—if Plaintiff and the other class members received telemarketing texts from a number linked to Callfire, and their "STOP" requests yielded a confirmatory message opting them out of a CallFire alert program, it is more than plausible that CallFire was highly involved in the placement of calls (if not the maker or initiator of said calls) and is therefore liable under the TCPA.

In response, CallFire predictably argues that Plaintiff did not allege enough to plausibly suggest its liability. Defendant contends that Plaintiff's allegation of shortcode ownership is "unsupported" (ECF 17–1, at 6), and it further likens the Complaint to the first filed in *Kauffman*, which supposedly "[did] not explain how [the plaintiff] knew that [CallFire] placed the text messages." (*Id.* at 10 (quoting *Kauffman v. CallFire, Inc.*, No. 3:14-cv-1333-H-DHB, 2014 WL 12778843, at *2 (S.D. Cal. Sept. 9, 2014)). Of course, ownership of the shortcode may only be made certain through discovery. However, Plaintiff's inclusion of screenshots of the text messages that he received reveal the basis for his allegations, which are adequately supported to survive a motion to dismiss. The confirmatory texts that Plaintiff received after making his STOP requests are plainly preceded by the phrase "CallFire Alerts." (*See* ECF 1, at ¶ 18.) It is reasonable for Wigod and any other consumer in receipt of such messages to conclude that CallFire, the entity *named in the messages* that alerts consumers that they have opted out of its "program," is responsible for the calls. This is enough to raise the claims above the speculative level; to require more at this stage would be to require Plaintiff to prove his case without the benefit of fact discovery.

Additionally, CallFire makes several arguments based not on the Complaint but on representations about its services that are improperly before the Court and exceed the evidentiary scope of a motion to dismiss. CallFire devotes a portion of its motion to describe its "offering" and the relationship that it supposedly has with its customers. (ECF 17-1, at 3–5.) Defendant relies on these representations throughout its argument, even going so far as to say that it enjoys common carrier immunity "as a matter of law" because some courts have previously agreed with its characterization. (*Id.* at 19.) At this stage, however, such a conclusion is inappropriate.

Though the relationship between CallFire and its clients will be considered as part of the common carrier inquiry, it requires the Court to rule on facts that are not yet before it—facts that require discovery to be establish. Indeed, the courts in this circuit have made exactly that conclusion when considering motions to dismiss by CallFire. For example, in *Couser*, the Southern District of California found CallFire's description of its involvement in placing the calls as "rather cagey," noting that CallFire deflects responsibility to its clients, but "also describes its service in a way that suggests *it* actually places the calls." *Couser*, 994 F. Supp. 2d at 1103. The court recognized that CallFire seemed "certainly close enough to the caller," but it declined to make this factual determination on a motion to dismiss:

> Whatever the true and exact relationship between CallFire and its customers is, the Court finds it to be too fact-intensive, and certainly too disputed, to be resolve at the motion to dismiss phase in CallFire's favor. By CallFire's own words, it receives numbers from its customers and it transmits or delivers a recorded message to those numbers. That essentially makes it a caller, at least by some common-sense definition of the term, even if the customers are the chief architects of the calls. . . . [W]ith only pleadings to go on and no discovery as to the precise relationship between CallFire and [its clients], it is simply too early in this litigation for the Court to affirmatively conclude that CallFire is the middleman it claims.

*Id.* at 1103–05. *Couser* is not an anomaly; it is a reflection of appropriate standards for a motion to dismiss, adopted by other courts as well. *See Linlor v. Five9, Inc.*, No. 17CV218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) ("The Court, like other district courts have done in analogous cases, declines to find as a matter of law, at the pleadings stage, that Defendant is a common carrier exempt from liability under the TCPA."); *Luna*, 2014 WL 5324291, at *2 (citing

*Couser* as "convincing" and following suit). The case at hand is no different: Defendant asks the Court to accept its representations about its own service without any discovery to verify the relationship with CallFire's clients. To do so on a motion to dismiss would inappropriately exceed the standard of construing factual allegations in a light most favorable Plaintiff as the non-movant. *See Couser*, 994 F. Supp. 2d at 1101 (citing *Cedar-Sinai Med. Ctr. V. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007).

Plaintiff has sufficiently pleaded CallFire's involvement in the initiation of unlawful text messages to survive a motion to dismiss. Defendant's arguments to the contrary either ignore support in the Complaint or ask the Court to extend beyond the evidentiary scope of a motion to dismiss. Accordingly, the Court should deny CallFire's motion and permit this case to proceed.

**B.   Wigod Has Pleaded Facts To Plausibly Suggest That CallFire's Service Platform Is An ATDS.**

In addition to arguing that it is not liable as an initiator of the text messages in question, CallFire contends that its platform does not qualify as an ATDS for the purposes of TCPA liability. However, Plaintiff has pleaded sufficient facts to demonstrate the automated nature of CallFire's system above the speculative level. Defendant is once again attempting to prematurely elicit fact-based determinations from the Court before discovery can be conducted.

The TCPA prohibits the use of an automatic telephone dialing system to make texts or calls to consumer cell phones. 47 U.S.C. § 227(b)(1)(A)(iii). The statute defines an ATDS as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1). The Ninth Circuit clarified last year that this definition includes "devices with the capacity to dial stored numbers

automatically." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1052 (9th Cir. 2018).

Of course, no autodialer is fully automated, meaning that it could operate without *any* human intervention whatsoever: "at the very least, a human has to flip the switch on an ATDS." *Id.* at 1053. Rather, by referring to the devices in question as automatic *dialing* systems, "Congress made clear that it was targeting equipment that could engage in automatic *dialing*, rather than equipment that operated without any human oversight or control." *Id.* at 1052. The level of human intervention required to remove any particular system from the ATDS definition is a mixed question of fact and law that requires case-by-case determination. *See Herrick v. GoDaddy.com LLC*, 312 F. Supp. 3d 792, 801 (D. Ariz. 2018) (citing *TCPA Declaratory Ruling* at 7973).

At the motion to dismiss stage, the Court recently found that "it is unreasonable to expect [plaintiffs] to know or plead with a high level of precision the technology behind the messages." *Armstrong v. Investor's Business Daily, Inc.*, No. CV 18-2134-MWF (JPRx), 2018 WL 6787049, at *9 (C.D. Cal. Dec. 21, 2018). Instead, plaintiffs may meet their burden by pleading enough circumstantial or indirect allegations, such as "content of the messages, context and manner in which they were sent, existence of similar messages, frequency of messages, etc.," to plausibly suggest the use of an ATDS. *Id.* For example, the Ninth Circuit reversed dismissal of a TCPA complaint where the plaintiff alleged that: (1) he received multiple identical messages, including immediate replies confirming opt-out; (2) he continued to receive messages following that confirmation; (3) all messages were "generically formatted and appeared scripted"; (4) none of the messages referenced him directly; and (5) the texts came from a shortcode, which is "typically associated with automated services." *Flores v. Adir Int'l, LLC*, 685 Fed.

Appx. 533, 533 (9th Cir. 2017); *see also Washington v. Six Continents Hotels, Inc.*, No. 2:16-CV-03719-ODW-JEM, 2018 WL 4092024, at *4 (C.D. Cal. Aug. 24, 2018) (citing *Flores* and others); *Rouse v. Delta Air Lines, Inc.*, No. CIV. 15-1642 PAM/JSM, 2015 WL 4636726, at *3 (D. Minn. Aug. 4, 2015) (finding that allegations of generic messages and failed stop requests were sufficient to plausibly allege use of an ATDS).

Here, Plaintiff has adequately alleged that the text messages he and the class members received from CallFire were sent using an ATDS. Plaintiff has alleged that the system in question automatically dialed numbers *en masse* from a stored list or database. (ECF 1, at ¶¶ 36–38.) Plaintiff further demonstrated the automated nature of the text messages by describing, and providing screenshots of, the messages that he received. (*Id.* at ¶¶ 12–18.) In particular, Wigod received several of the telemarketing messages in a predictable pattern: once a day for three days in a row. (*Id.* at ¶ 18.) The telemarketing messages—which were sent from an SMS shortcode—were generic and impersonal, making no reference to Wigod and describing sales that could have been (and likely were) offered to countless other recipients with no change to the message. (*Id.*) Additionally, Plaintiff made stop requests that were not honored, but he received replies that were delivered immediately and contained an *identical* message confirming his removal from the messaging program. (*Id.*) Wigod has more than met his burden to plausibly suggest the use of an ATDS. Any further specific details about CallFire's dialing system could not be alleged because Plaintiff does not have access to those details—such information would have to be procured through discovery.[1]

---

[1] To the extent that the Court may consider Defendant's representations in the Motion, CallFire describes its offering as enabling customers to simply "push the send button" to activate the system. (ECF 17-1, at 12.) Paired with CallFire's claim on its website that the platform allows users to "reach thousands instantly,"

In response, CallFire argues that its system is not an ATDS "as a matter of law." (ECF 17-1, at 18.) To support its position, Defendant cites to three cases—*Luna v. Shac, LLC*, 122 F. Supp. 3d 936, 940–42 (N.D. Cal. 2015); *Ramos v. Hopele of Fort Lauderdale, LLC*, 334 F. Supp. 3d 1262, 1275 (S.D. Fla. 2018); and *Duran v. La Boom Disco, Inc.*, No. 17cv-6331, 2019 WL 959664, at *4–11 (E.D.N.Y. Feb. 25, 2019). The cases cited are distinguishable for a number of reasons. First, each of these cases considered CallFire's calling system at the *summary judgment* stage (as opposed to a motion to dismiss), which includes a heightened level of proof and the benefit of discovery. Second, none of these cases were decided under *Marks*—*Luna* predates the Ninth Circuit's *Marks* decision, and both *Ramos* and *Duran* were decided in other circuits.

Finally, and perhaps most crucially, none of these cases involved stop requests or automated confirmation messages. By contrast, Wigod received and alleged receipt of automated confirmatory messages that, because they are titled with the phrase "CallFire Alerts," were plausibly sent by CallFire through an ATDS. (*See* ECF 1, at ¶¶ 14–18.) In other words, Plaintiff has alleged even more facts to suggest the automated nature of Defendant's platform. Despite these distinctions, CallFire is asking once again for proof of the case and evidentiary determinations beyond the scope of the present motion. At this stage of the litigation, Plaintiff has met his pleading requirements by alleging enough about the nature of the messages he received to, when taken as true, plausibly suggest that CallFire's mass text messaging platform qualifies as an ATDS. Absent discovery related to the nature of CallFire's messaging platform, it is inappropriate to accept

---

it is evident that Defendant's system is an ATDS that achieves mass text communication by automating the dialing process. *See Text Messaging*, CallFire, https://www.callfire.com/products/text-messaging (last visited June 20, 2019).

Defendant's assertions *beyond* the pleadings as true and to conclude at this time that the system in question is not an ATDS.

CallFire also likens Plaintiff's claims to those raised in *Hulsey v. Peddle, LLC*, No. CV 17-3843 DSF (ASx), 2017 WL 8180583 (C.D. Cal. Oct. 23, 2017). (ECF 17-1, at 17–18.) While the allegations are admittedly similar—given that both were TCPA claims involving automated text messages—the facts of *Hulsey* bear a critical distinction from the present case that led to dismissal of the complaint. "Peddle's texts were sent <u>after</u> Hulsey provided her phone number on the Junk Car Zone website, which suggests 'direct targeting that is inconsistent'" with the use of an ATDS. *Hulsey*, 2017 WL 8180583, at *2 (quoting *Weisberg v. Stripe, Inc.*, 2016 WL 3971296, at *3 (N.D. Cal. July 25, 2016)). Due to this prior relationship, Hulsey's allegations did not support a reasonable inference of the use of an ATDS. *Id.* at *2–3. Here, on the other hand, Wigod had no prior relationship with CallFire and never provided his phone number to Defendant. (ECF 1, at ¶ 19.) Thus, his allegations are distinguishable from those in *Hulsey* and illustrate the use of an ATDS with greater plausibility.

In short, Defendant's arguments ignore the standard for review of a motion to dismiss and ask Wigod to prove his case without any discovery. Plaintiff has met his burden by credibly alleging that CallFire used an ATDS to place the text message calls at issue, and its motion should be denied.

## IV.   CONCLUSION

The Court should deny CallFire's Motion to Dismiss. Wigod has plausibly alleged CallFire's involvement in initiating the unsolicited text messages, as a common carrier or otherwise, and he has adequately suggested that the system used was an ATDS. Defendant's attack on the Complaint impermissibly exceeds the scope of review at this stage of the litigation—the time to prove Wigod's claims has

not yet arrived. Accordingly, the Court should deny CallFire's motion and award any such relief as it deems necessary and just.

Respectfully Submitted,

**LEE WIGOD**, individually and on behalf of all others similarly situated,

Dated: June 24, 2019

By: ___/s/ Steven L. Woodrow___
        One of Plaintiff's Attorneys

**THE AFTERGOOD LAW FIRM**
Aaron D. Aftergood (239853)
aaron@aftergoodesq.com
1880 Century Park East, Suite 200
Los Angeles, CA 90067
Telephone: (310) 550-5221
Facsimile: (310) 496-2840

**WOODROW & PELUSO, LLC**
Steven L. Woodrow*
swoodrow@woodrowpeluso.com
Taylor T. Smith*
tsmith@woodrowpeluso.com
3900 East Mexico Avenue, Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809
*Pro Hac Vice

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on June 24, 2019.

/s/ Steven L. Woodrow  