Cheryl L. O'Connor (SBN. 173897)
coconnor@jonesday.com
Ann T. Rossum (SBN. 281236)
atrossum@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Telephone:  (949) 851-3939
Facsimile:  (949) 553-7539

Michael B. Hazzard (*pro hac vice*)
mhazzard@jonesday.com
Mathew W. Hoffmann (*pro hac vice*)
mhoffmann@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone: (202) 879-3939
Facsimile:  (202) 626-1700

*Counsel for Defendant CALLFIRE, INC.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LEE WIGOD, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CALLFIRE, INC.,<br><br>Defendant. | Case No. 2:19-cv-02874-SVW-MAA<br><br>Assigned to Hon. Stephen V. Wilson<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Hearing Date:   November 25, 2019<br>Time:         1:30 P.M.<br>Place:        10A<br><br>Complaint filed: April 15, 2019 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

After allegedly receiving four—and only four—text messages on a phone that his wife leases and that is subscribed to an account that his wife owns, Plaintiff Lee Wigod ("Plaintiff") brought this suit in federal court.  As federal courts are courts of limited jurisdiction, however, Plaintiff cannot maintain this action.  He suffered no injury in fact to provide him standing to sue because: 1) any alleged injury occurred to his wife, not to him; and 2) even if a Telephone Consumer Protection Act ("TCPA") violation occurred, the receipt of four messages is not a concrete and particularized injury.  Accordingly, the Court should dismiss Plaintiff's Complaint for lack of subject matter jurisdiction.

## **FACTUAL SUMMARY**

Plaintiff claims that *four* text messages concerning home warranties and health insurance injured him.[1]  *See* ECF No. 1 ¶¶ 13–18.  According to Plaintiff, those four messages to the phone number ending in 2826 "interfered with Plaintiff's use and enjoyment of his phone," put "wear and tear on the phone's hardware (including the phone's battery)," and consumed his phone's memory.  *Id.* ¶ 22; *see also id.* ¶ 11.  Moreover, without naming what privacy interest he has with respect to the phone number at issue, Plaintiff claims the four messages caused him

---

[1] While records indicate that more messages may have been transmitted to Plaintiff, Plaintiff has made no claim in these proceedings concerning those messages. Indeed, he has provided no evidence that he received any other messages, besides those identified in his Complaint. Further, other messages, besides the four at issue, would fall outside the definition of his putative class.  That proposed definition only includes those who replied "stop" and received text messages after that opt out request.  ECF No. 1 ¶ 27.  Despite Plaintiff's apparent fixation with the messages confirming a stop request, *see, e.g.*, ECF No. 24 at 6, those too do not inflict an injury under either the TCPA or Article III.  *See Derby v. AOL, Inc.*, No. 15–cv–00452–RMW, 2015 WL 3477658, at *7 (N.D. Cal. June 1, 2015) ("Ultimately, the court finds that the confirmation text [confirming a stop request] at issue here is not actionable. Plaintiff's own text precipitated the confirmation text, and by texting [the initiator] requesting to opt-out of future messages, plaintiff knowingly released his phone number to [the initiator] and thereby consented to be texted back at that number.");  *Emanuel v. Los Angeles Lakers, Inc.*, No. CV 12-9936-GW SHX, 2013 WL 1719035, at *3 (C.D. Cal. Apr. 18, 2013).  Therefore, the fundamental issue concerns the four text messages Plaintiff's Complaint alleges he received.  *See* ECF No. 1 ¶ 18.

"annoyance, nuisance, and invasion of privacy." *Id.* ¶ 21.  Nowhere in his Complaint or elsewhere does Plaintiff claim he received the text messages at home or in some other space entitled to privacy protections.

Discovery has revealed facts that foreclose any of Plaintiff's claims to injury. Plaintiff does not pay the bill for service to the phone number ending in 2826 at issue, nor does he pay for the phone's lease.  Indeed, Plaintiff has had no job or other sources of compensation for at least the past four and half years—seriously calling into question his ability to pay for telephone service for a brand new iPhone. *See* Declaration of Michael B. Hazzard ("Hazzard Dec.") Ex. 1, at 6–7.  Rather, his wife, Lori Wigod, handles all relevant financial aspects of the phone plan for the phone number ending in 2826.  *See id.* at 5.  The Sprint account for the phone number is an unlimited phone plan with one flat monthly fee—no matter how many text messages are sent or received—and the account is in Lori Wigod's name.  *See id.* Ex. 2.  Indeed, Plaintiff's name appears nowhere on the account or account statements for the phone number ending in 2826.  *See id.*  Further, Lori Wigod, not Plaintiff, leases the iPhone X associated with the phone number ending in 2826. *See id.* Ex. 2, at 13; *id.* Ex. 3, at 22.  That lease agreement, in Lori Wigod's name, prevents her from transferring the phone "to any third party" until she pays for the phone in full.  *Id.* Ex. 3, at 22.  Further, Lori Wigod, not Plaintiff, agreed to pay each lease payment for the phone at issue.  *See id.*  The only connection linking Plaintiff to the phone number and phone at issue is his assertion, now contradicted by undisputed facts, that "*his* cellphone" received the allegedly unlawful text messages at issue.  ECF No. 1 ¶ 12 (emphasis added).

## LEGAL STANDARD

"A motion to dismiss under Rule 12(b)(1) addresses the court's subject matter jurisdiction, derived from Article III of the United States Constitution." *Nat'l Union Fire Ins. Co. v. ESI Ergonomic Solutions, LLC*, 342 F. Supp. 2d 853, 861 (D. Ariz. 2004); *see also* Fed. R. Civ. Pro. 12(b)(1).  "It is to be presumed that

a cause lies outside of this limited [federal] jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  A "factual attack on subject matter jurisdiction" allows a defendant to "rely on affidavits or any other evidence properly before the Court." *Nat'l Union*, 342 F. Supp. 2d at 861 (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989) (internal quotation marks omitted)).  After the moving party presents evidence of a lack of subject matter jurisdiction, "[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair*, 880 F.2d at 201.

   "A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit.  In that event, the suit should be dismissed under Rule 12(b)(1)." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004) (citations omitted). "[T]he 'irreducible constitutional minimum' of standing consists of three elements . . . [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "A 'concrete' injury must be 'de facto'; that is, it must actually exist" and not be "hypothetical or conjectural." *Id.*; *Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019).  Importantly, "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549.

## ARGUMENT

### I.   PLAINTIFF SUFFERED NO INJURY IN FACT FROM FOUR TEXT MESSAGES SENT TO A PHONE LEASED BY HIS WIFE

A mere four text messages transmitted to a phone his wife leases with service under his wife's Sprint account cannot confer on Plaintiff standing to sue in federal court.

First, any alleged injuries occurred to Plaintiff's wife, Lori Wigod, not Plaintiff.  Plaintiff's tenuous connection to any economic injury is alleged wear and tear on the phone and its battery from receiving four text messages in addition to space on the phone's memory.  Even if all of those claimed ills occurred, and even if they met the threshold of an injury in fact, the dispositive fact is that they did not injure Plaintiff.  While Plaintiff may use the phone associated with the number ending in 2826, it is not "his" phone.  His wife leases the phone and is financially responsible for paying the lease.  It is *her* phone.  Any wear and tear occurred to Lori Wigod's phone.  Any depletion of battery, however minimal, afflicted Lori Wigod's phone.  Any memory lost affected Lori Wigod's phone.  Plaintiff's wife also owns the Sprint account providing service to the phone, and thus any charges for text messages received would accrue to her.  But Lori Wigod is subscribed to an unlimited plan, with no individual charges for text messages, so the alleged cost of any messages received could not have injured either Lori Wigod or Plaintiff.  *See* Hazzard Dec. Ex. 2.

Plaintiff himself can have no privacy interest in a phone leased by, paid for, and supplied by his wife.  Though "Congress sought to protect" "privacy interests" by enacting the TCPA, that protection did not—and could not—expand Article III standing to allow plaintiffs to protect the privacy interests of others. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1043 (9th Cir. 2017); *see Spokeo*, 136 S.Ct. at 1547–48 ("Injury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the

1   right to sue to a plaintiff who would not otherwise have standing." (citation and

2   internal quotation marks omitted)).  Injuries his wife may have suffered to her

3   privacy cannot confer on Plaintiff Article III standing.  *See Elrawi v. Burgess*, No.

4   5:17-cv-02463 DMG (MAA), 2018 WL 4223652, at *8 (C.D. Cal. Sept. 5, 2018)

5   ("To the extent Plaintiff asserts claims or seeks relief on behalf of his wife, he

6   cannot represent her, and he does not have standing to bring claims for injuries she

7   suffered.").

8        Second, even if Plaintiff himself received the text messages on his phone,

9   four text messages do not make an injury in fact.  The Ninth Circuit, in *Van Patten*,

10   identified privacy interests as the heart of what Congress attempted to protect by

11   enacting the TCPA.  *See* 847 F.3d at 1043.  More recent authority, however, casts

12   doubt on the ability of a plaintiff to show either economic or intangible injury in

13   fact from receiving a small number of text messages.  *See Salcedo v. Hanna*, 936

14   F.3d 1162 (11th Cir. 2019).  In *Salcedo*, the Eleventh Circuit held that a TCPA

15   plaintiff could not maintain Article III standing without—at the very least—

16   allegations that a text message either disabled the use of the plaintiff's phone and

17   deprived him of its use, or that the message cost him some money.  *See id.* at 1167–

18   68.  Those allegations are notably absent here.

19        With regard to alleged privacy interests at stake, the *Salcedo* court reasoned

20   that, as Congress passed the TCPA in 1991, long before the advent of text

21   messaging, it could not have directed the statute toward text messages.  *See id.* at

22   1168–69.  Rather, Congress focused on protecting "privacy within the sanctity of

23   the home that do[es] not necessarily apply to text messaging."  *Id.* at 1169.  Absent

24   any claims that a plaintiff received text messages while at home—a claim which

25   Plaintiff does not make—no injury in fact exists.  *See id.* at 1172; *see also id.* at

26   1170 (noting that *Van Patten* "stopped short of examining whether isolated text

27   messages not received at home come within that judgment of Congress").  Indeed,

28   "[t]he chirp, buzz, or blink of a cell phone receiving a single text message is more

CALLFIRE, INC.'S MEMO OF POINTS AND
AUTHORITIES ISO MOTION TO DISMISS
2:19-cv-02874-SVW-MAA

akin to walking down a busy sidewalk and having a flyer briefly waived in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts." *Id.* at 1172.  Plaintiff's perceived annoyance does not allow him to invoke the jurisdiction of the federal courts.

## CONCLUSION

For the foregoing reasons, CallFire, Inc. respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety and with prejudice.

Dated: October 28, 2019

Respectfully submitted,

By: */s/ Michael B. Hazzard*
Cheryl L. O'Connor (SBN. 173897)
coconnor@jonesday.com
Ann T. Rossum (SBN. 281236)
atrossum@jonesday.com
JONES DAY
3161 Michelson Drive, Suite 800
Irvine, California 92612-4408
Telephone:  (949) 851-3939
Facsimile:   (949) 553-7539

Michael B. Hazzard (*pro hac vice*)
mhazzard@jonesday.com
Mathew W. Hoffmann (*pro hac vice*)
mhoffmann@jonesday.com
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001.2113
Telephone:   (202) 879-3939
Facsimile:    (202) 626-1700

Counsel to Defendant
CALLFIRE, INC.